UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL D. CLUGSTON, on Behalf of Himself and All Others Similarly Situated, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 1:13-cv-01047-TWP-MJD<br>) |
| SHAMROCK CARTAGE AND SPOTTING SERVICES, DANIEL O'BRIEN, and MATTHEW HARPER, | )<br>)<br>)<br>) |
| Defendants. | ) |

## ENTRY ON MOTION TO CONDITIONALLY CERTIFY CLASS

This matter is before the Court on a Motion for Certification and Notice of Collective Action Lawsuit filed by Plaintiff Michael D. Clugston ("Mr. Clugston") on behalf of himself and all others similarly situated (Filing No. 40). Mr. Clugston brought this action against Defendants Shamrock Cartage and Spotting Services ("Shamrock"), Daniel O'Brien ("Mr. O'Brien"), and Matthew Harper ("Mr. Harper") (collectively, "Defendants") for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA"). A hearing was held on the motion on August 12, 2014. Mr. Clugston appeared in person and by counsel Ronald E. Weldy. Defendants appeared by counsel Natascha B. Rieco and Noah A. Finkel. Mr. Harper appeared as the party representative for Defendants. The Court Reporter was David Moxley.

### I. BACKGROUND FACTS

Shamrock is a company that provides cartage pickup and delivery, as well as spotting or yard jockeying and yard management services. Shamrock provides services for clients at locations in Illinois, Indiana, Pennsylvania, Georgia, Texas and North Carolina. Filing No. 48-1, at ECF p. 2. Mr. O'Brien is the President of Shamrock, and Mr. Harper is the Vice-President of Operations

and co-owner. Mr. Clugston began working for Defendants on March 14, 2011 as a Spotter. Spotters are drivers who are responsible for moving truck trailers on or about Defendants' customers' premises, either within the customers' yard or between the loading docks and the yard, so as to maximize space and maintain organization of the yard. At all times while he was employed by Defendants, Mr. Clugston was an hourly employee, as were all Spotters working for Defendants. Mr. Clugston was not paid any overtime premiums for hours that he worked over 40 during a given workweek. Defendants admitted in their Amended Answer that they do not pay any overtime premiums for hours worked by Spotters over 40 hours per week, and that Mr. Clugston himself was not paid overtime wages. *See* [Filing No. 43, at ECF pp. 5-7](#).

Defendants assert that some employees that performed spotting services engaged in duties that would render them properly classified as exempt from FLSA overtime requirements under the Motor Carrier Act ("MCA") exemption. *See* 29 U.S.C. § 213(b)(1). The MCA exemption refers to employees who are exempt from the FLSA's overtime requirements by virtue of being subject to the U.S. Secretary of Transportation's power to establish qualifications and maximum hours of service pursuant to 49 U.S.C. § 31502. 29 U.S.C. § 213(b)(1). Defendants argue that because some potential class members could be subject to this exemption, Mr. Clugston has not shown that he is similarly situated to the putative class members. Because of this, Defendants argue, conditional class certification is not proper until the Court is able to engage in "fact-intensive individual inquiries." [Filing No. 14, at ECF p. 12](#).

## II. LEGAL STANDARDS

The FLSA provides that an action for unpaid minimum wages or unpaid overtime compensation may be brought "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). A collective action under

the FLSA differs significantly from a class action brought pursuant to Federal Rule of Civil Procedure 23. *Moss v. Putnam Cnty. Hosp.*, No. 2:10-cv-00028-JMS-WGH, 2010 WL 2985301, *1 (S.D. Ind. July 21, 2010). The primary difference is that plaintiffs who wish to be included in a collective action must affirmatively opt-in by filing a written consent with the court, while members of a Rule 23 class action are automatically included unless they affirmatively opt-out. *Alvarez v. City of Chi.*, 605 F.3d 445, 448 (7th Cir. 2010). Rule 23 and its standards governing class certification do not apply to a collective action brought under the FLSA. *Moss*, 2010 WL 2985301 at *1–2. Therefore, no showing of numerosity, typicality, commonality and representativeness needs to be made. *Brickel v. Bradford–Scott Data Corp.*, No. 1:09–CV–58, 2010 WL 145348, at *1 (N.D. Ind. Jan. 11, 2010).

### III. DISCUSSION

In order to decide whether to conditionally certify a collective action, the Court must initially determine whether members of the proposed class are similarly situated to the class representative, Mr. Clugston. *Campbell v. Advantage Sales & Mktg., LLC*, No. 1:09-cv-1430-LJM-DML, 2010 WL 3326752, *3–4 (S.D. Ind. Aug 24, 2010). Courts in this Circuit typically use a two-step inquiry. In the first step, also known as the notice stage, the court analyzes the pleadings and affidavits that have been submitted to determine whether notice should be given to the putative class members. *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 438-39 (S.D. Ind. 2012) (citing *Campbell*, 2010 WL 3326752 at *3); *see also Fravel v. Cnty. of Lake*, No. 2:07–CV–253, 2008 WL 2704744, at *2-3 (N.D. Ind. July 7, 2008) ("Conditional certification . . . is an initial determination that simply allows for putative class members to be identified and notified of their opportunity to opt-in.") (internal quotations omitted). After conditional certification, notices are issued and go to the conditionally certified collective action members. The action proceeds as a

representative action throughout discovery, and near the end of discovery, the court makes a factual determination of whether the plaintiffs are similarly situated. *Fravel*, 2008 WL 2704744 at *3. This first step does not impose a high burden on the plaintiff, who is only required to make a "modest factual showing" that the class members were "victims of a common policy or plan that violated the law." *Id.*; *Wiyakaska v. Ross Gage, Inc.*, No. 1:10–CV–1664, 2011 WL 4537010, at *2 (S.D. Ind. Sept. 28, 2011). At this stage, the court must accept as true the plaintiff's allegations and does not reach the merits of the plaintiff's FLSA claims. *Fravel*, 2008 WL 2704744 at *2.

The second step occurs after discovery has largely been completed and allows a defendant the opportunity to seek decertification of the class, or restrict the class because various putative class members are not, in fact, similarly situated as required by the FLSA. *Adair v. Wis. Bell, Inc.*, No. 08-C-280, 2008 WL 4224360, at *3 (E.D. Wis. Sept. 11, 2008). This involves a more stringent inquiry under which courts typically consider the following factors: "(1) whether plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." *Threatt v. CRF First Choice, Inc.*, No. 1:05-cv-117, 2006 WL 2054372, at *5 (N.D. Ind. July 21, 2006). This two-step inquiry is collapsed when a plaintiff seeks conditional certification of a FLSA collective action after significant discovery has occurred in the case. *Hawkins*, 287 F.R.D. at 439 (citing *Purdham v. Fairfax Cnty. Pub. Schs.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009)).

The FLSA does not define "similarly situated" or instruct judges when they should exercise their discretion and authorize notice to potential plaintiffs. However, district courts within this Circuit have held that being similarly situated does not require identical positions of the putative

class members; instead, it requires that common questions predominate among the members of the class. *Campbell*, 2010 WL 3326752 at *3-4 (citing cases).

**A.     Conditional Certification**

Mr. Clugston filed his motion for conditional certification of the proposed collective action prior to engaging in discovery; thus, only the first step of the two-part inquiry is applicable under these circumstances, and he must only make a modest showing that he is similarly situated to the purported plaintiffs. The class definition proposed by Mr. Clugston is:

> All present and former yard hostlers and/or yard jockeys and/or yard drivers and/or spotters employed by Shamrock Cartage and Spotting Services that have worked more than 40 hours in a workweek on or after _____, 2011.[1]

Filing No. 41, at ECF p. 2. Mr. Clugston anticipates the date will be set by the Court, and should be three years from the date when the Notice of Collective Action is mailed to potential opt-in plaintiffs, taking into account any tolling. "Equitable tolling is extended sparingly and only where claimants exercise diligence in preserving their legal rights." *Curless v. Great Am. Real Food Fast, Inc.*, 280 F.R.D. 429, 434 (S.D. Ill. 2012) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). "A litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in his way." *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Mr. Clugston has not made any arguments regarding whether equitable tolling is necessary or warranted in this case, and there does not appear to be an unreasonably long delay between the filing of the motion and the issuance of this ruling.

Defendants' primary argument is that some of the Spotters perform other types of driving activities that require them to operate trucks on public roads, *e.g.* where a customer has two

---

[1] The Reply proposed a slightly differently worded definition, but they are the same in substance. *See* Filing No. 56, at ECF p. 7.

separate facilities located in short proximity from one another that requires the driver to transport a trailer from one location to another. Filing No. 48, at ECF p. 14. They argue that this activity causes them to fall within the scope of the MCA exemption and these employees are not required to be paid overtime wages under the FLSA. Defendants list a number of considerations in determining whether an employee is MCA exempt, including the state in which they work, the accounts they are servicing, clients' needs, and whether the driver possesses a Commercial Driver's License ("CDL"), as only drivers who possess a CDL may drive certain trucks on public highways. Filing No. 48, at ECF p. 17.

Defendants are asking the Court to make factual determinations regarding the status of each putative class member, ignoring the fact that discovery had not yet commenced in this action at the time the motion was filed, and that Mr. Clugston is subject to a lower standard at the conditional certification stage. Until the parties undergo discovery, it would be impossible for them and the Court to know whether the putative class members individually 1) only moved trailers on customers' property; 2) legally or illegally drove over public roads; and 3) ever acted as an interstate driver and if so, how often. These determinations cannot be made simply based upon the affidavits of a select few employees provided by Defendants. *See* Filing No. 48.

In addition, even if Defendants can show that some Spotters occasionally performed work that was exempt from the FLSA overtime requirements, the Spotter still may not qualify for the MCA exemption.

> [W]here the continuing duties of the employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be *de minimis*, the exemption will not apply to him in any workweek so long as there is no change in his duties. . . . If in particular workweeks other duties are assigned to him which result, in those workweeks, in his performance of activities directly affecting the safety of operation of motor vehicles in interstate commerce on the public highways, the

6

> exemption will be applicable to him those workweeks, but not in the workweeks when he continues to perform the duties of the non-safety-affecting job.

29 C.F.R. § 782.2(b)(3).[2] Only where a driver performs activities qualifying for MCA exemption regularly or from time to time in the "ordinary course of his work"—generally, in all workweeks—will the driver be considered exempt from the FLSA, regardless of what proportion of the driver's time is dedicated to exempt activities in a particular workweek. *Id.* Thus, merely by showing that a Spotter has performed work that falls within the MCA exemption does not definitively answer the question of whether he is an exempt employee in general. Defendants stated that only about one-fourth of Shamrock's trucks are plated, licensed and insured to be driven on public roads, meaning that there necessarily are a substantial number of trucks—and thus, drivers—who do not perform work activities that fall within the MCA exemption. *See* Filing No. 48-1, at ECF p. 3. Mr. Harper stated in his declaration that its vehicles are designed to move semi-trailers in or around commercial freight yards, so it cannot be automatically assumed that the licensed and plated vehicles in Shamrock's fleet are always operated on public roads. *See* Filing No. 48-1, at ECF p. 3.

In any event, it is not necessary to make these determinations at this stage in the certification process. Such information will be revealed through discovery, and at that time Defendants will be able to revisit the issue and either move for class decertification or to further restrict the class because various putative class members are not similarly situated. *Hawkins*, 287 F.R.D. at 439. Courts have stated that this is to occur only after "discovery has largely been completed" or "after significant discovery." *Id.* To make such a determination at this stage would be reaching the merits of Mr. Clugston's FLSA claims, which is not permitted. *See Thompson v.*

---

[2] Activities "affecting the safety of operation of motor vehicles in the transportation on the public highways of . . . property" are the activities that are exempt from the FLSA under the Motor Carrier Act. *See* 29 C.F.R. § 782.2(a).

7

*K.R. Drenth Trucking, Inc.*, No. 1:10-cv-00125-TWP-DKL, 2011 WL 2446282, at *2 (S.D. Ind. June 15, 2011) (citing *Fravel*, 2008 WL 2704744 at *2).

The Court finds that Mr. Clugston has satisfied his present burden of making a "modest showing" that he and the other Spotters were subject to a common pay practice which is allegedly in violation of the FLSA. Defendants admitted in their Amended Answer that 1) Shamrock employs Spotters; 2) Shamrock pays Spotters on an hourly basis; and 3) Shamrock does not pay Spotters overtime wages for hours worked in excess of 40 hours per week. Filing No. 43, at ECF p. 5. Because Defendants have admitted that this policy is applicable to all Spotters, this is a sufficient showing that Mr. Clugston and the Spotters are similarly situated for conditional certification purposes. As such, the Court finds that the class should be conditionally certified, which would include any current or previously employed Spotter who has worked in excess of 40 hours per week, and allow notice to be sent to these potential collective action plaintiffs, giving them the opportunity to opt-in. *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008). After discovery, Defendants may move for decertification of the collective action, and the Court can then make a factual determination whether some of these individuals would need to be excluded from the class.

**B.     Information to be Produced**

Defendants also object to Mr. Clugston's request for certain information regarding the proposed collective action members, including their names, addresses, telephone numbers, dates of employment, location of employment, and dates of birth, arguing that this information should be provided to a third-party administrator, not to Mr. Clugston. In other cases in which defendants objected to the production of sensitive information, such as potential plaintiffs' birth dates and telephone numbers, courts in this District have held that plaintiffs must make a showing of a

"special need for disclosure" of this information. *See Carter v. Ind. St. Fair Comm'n*, No. 1:11-CV-852-TWP-TAB, 2012 WL 4481350, at *6 (S.D. Ind. July 17, 2012), *report and recommendation adopted*, 1:11-CV-00852-TWP, 2012 WL 4481348 (S.D. Ind. Sept. 28, 2012) ("[i]f plaintiffs encounter difficulties providing notice to potential class members because they do not have sufficient information to find them, they may request the more personal information at that time.") (quoting *Kelly & Clark v. BlueGreen Corp.*, 256 F.R.D. 626, 632 (W.D. Wis. 2009)); *see also Andrade v. Aeroteck, Inc.*, No. CCB08–2668, 2009 WL 2757099, at *1 n.1 (D. Md. Aug. 29, 2009) (discussing cases precluding the disclosure of telephone numbers and birth dates and suggesting that such information is unnecessary unless mailed notice is returned as undeliverable). In *Carter*, Magistrate Judge Tim Baker determined that the plaintiffs' assertion that telephone numbers and birth dates were necessary to locate putative class members who had moved was "speculative" and it was not necessary to require disclosure of this information at the outset. 2012 WL 4481230 at *6. The case cited by Mr. Clugston, *Thompson v. K.R. Drenth Trucking, Inc.*, No. 1:10-cv-0135-TWP-DKL (Filing No. 77, at ECF p. 6), is distinguishable because the defendants did not object to the disclosure of sensitive personal information. In the present case, the Court finds it is proper to exclude the disclosure of telephone numbers and birth dates for reasons similar to those in *Carter*, and will permit Mr. Clugston to later request this information should it be necessary to assist in locating potential plaintiffs should the first attempt at notice via mail fail.

With regard to Defendants' request that putative collective action members' contact information be provided to a third-party administrator and not Mr. Clugston himself, they have not shown any reason why a third-party administrator should be used in this case, aside from speculation that putative plaintiffs may not want to be contacted by Mr. Clugston's counsel. Mr. Clugston objects to this request on the basis that he would be prejudiced financially if he were

required to pay for a third-party administrator. Courts in this Circuit have rejected the argument that the privacy rights of potential plaintiffs outweigh a plaintiff's need for contact information. *Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 766-67 (N.D. Ill. 2011); *see also Acevedo v. Ace Coffee Bar, Inc.*, 248 F.R.D. 550, 554 (N.D. Ill. 2008) ("[T]he plaintiff's need and due process right to conduct discovery outweighed any privacy concerns of the putative plaintiffs.") (quotations omitted). Thus, there is no legal or factual basis for requiring Mr. Clugston to pay for a third-party administrator. Defendants do have the option to pay for a third-party administrator to process the information and issue notices at their sole expense. *Nehmelman*, 822 F. Supp. 2d at 767. Defendants may also move for the entry of a protective order limiting the use of this information to its intended purposes. *Id.* The Court concludes that Mr. Clugston is entitled to receive the requested information, minus the telephone numbers and dates of birth of the potential plaintiffs.

**C.    Notices**

Defendants ask that the Court permit the parties a reasonable period of time to negotiate and agree upon the content, format, and means of distribution of an appropriate notice and consent form. Mr. Clugston had not provided a proposed notice with his motion for conditional certification; however, he did file a proposed notice and opt-in form after the hearing (Filing No. 58). Typically, the Case Management Plan is amended after a motion for conditional certification is granted to provide a date by which plaintiff has to provide defendants with a proposed notice, a date by which defendants have to respond, and a date by which the plaintiff has to file a Motion for Approval of Proposed Collective Action Notice and Opt-In Consent Form. *See Thompson*, 1:10-cv-00135-TWP-DKL, Dkt. 105. The parties have not yet had their initial pretrial conference, which was vacated and is to be reset following the Court's ruling on this motion. Filing No. 42.

The parties should meet with the Magistrate Judge for an initial pretrial conference, and include deadlines for the submission of the proposed collective action notice in the Case Management Plan. In addition, because the parties have not had the opportunity to confer and discuss the proposed notice, the Motion to Approve Notice of Lawsuit and Opt-In Form ([Filing No. 58](Filing No. 58)) filed by Mr. Clugston is **DENIED** as premature, and the proposed notice and opt-in form are **STRICKEN**.

### IV. CONCLUSION

Based upon the foregoing, the Court finds that Mr. Clugston has made a sufficient showing at this stage of the case that the putative collective action members are similarly situated, and the Motion for Certification ([Filing No. 40](Filing No. 40)) is **GRANTED**. In addition, because the parties have not yet conferred to discuss the proposed notice and opt-in form, the Motion to Approve Notice of Lawsuit and Opt-In Form ([Filing No. 58](Filing No. 58)) is **DENIED**.

Defendants are hereby **ORDERED** to produce the contact information for the putative class members, with the exception of birth dates and telephone numbers. In the event Mr. Clugston requires this additional information, he may file a motion with the Court demonstrating a need for the additional information in order to provide notice to the putative collective action members. Defendants may file a motion for a protective order to limit the use of the contact information if they believe such an order is necessary. The parties are to confer with the Magistrate Judge to set a Case Management Plan, in which the parties will be provided with deadlines for them to confer and agree on a proposed Notice of Collective Action to be filed with the Court for approval.

**SO ORDERED.**

Date: 10/30/2014

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Natascha B. Riesco
SEYFARTH SHAW LLP
nriesco@seyfarth.com

Noah A. Finkel
SEYFARTH SHAW LLP
nfinkel@seyfarth.com

Matthew D. Derringer
WELDY & ASSOCIATES
mattderringer@yahoo.com

Ronald E. Weldy
WELDY & ASSOCIATES
weldy@weldylaw.com